## APPEAL OF JOSEPH STARK.

### [ASSIGNED ESTATE OF JOSEPH STARK.]

#### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 23, 1889—Decided October 7, 1889.

[To be reported.]

1. While an auditor has no power, in a collateral proceeding, to inquire into the validity of a judgment regular on its face, yet he may receive evidence to show that a judgment, given for one purpose, has been fraudulently used by the plaintiff for another and different purpose.

2. In a proceeding to surcharge an assignee for creditors, testimony is admissible to show that he received moneys collected from the assignor by execution from a conditional judgment on which there was nothing due, the sale being suffered by the assignor under an agreement that the amount thus collected should be for his use.

3. An assignor who has failed in an effort before an auditor to surcharge an accountant with alleged trust moneys, may not be ordered to pay, as part of the costs of audit, the counsel fee of the accountant, incurred for services rendered in resisting the attempt to establish a trust as to the moneys in question.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 430 January Term 1889, Sup. Ct.; court below, Trust Book No. 11, p. 9, C. P.

On October 1, 1887, John F. Griel, assignee for the benefit of the creditors of Joseph Stark, filed an account whereby he charged himself with having received the sum of $96.50, and took credit for payments amounting to $109.27, making due to the accountant a balance of $12.77. Exceptions to the account having been filed by the assignor, charging the assignee with fraudulent conduct and with a failure to properly account for the assets of the assigned estate, *Mr. George A. Lane* was appointed auditor to pass upon the same.

At the audit the following facts were found, as reported by the auditor in his report filed.

About 1872 or 1873 Jacob Griel, Sr., the father of the ac-

countant, began to indorse notes for Joseph Stark, the assignor, for the purpose of aiding him in his business. In 1875, Mr. Griel executed a general power of attorney to John F. Griel, his son, who thereafter represented him in all business transactions with Stark. On March 31, 1881, Stark executed a judgment bond in favor of Jacob Griel, Sr., for $2,000 as collateral security " to indemnify said Jacob Griel, Sr., for all indorsements now made or hereafter to be made by said Jacob Griel, Sr., for said Joseph Stark, and all renewals of the same, and to indemnify said Jacob Griel, Sr., for being security of any kind now or hereafter." This bond was filed and judgment entered thereon to No. 631 January Term 1881, in the court below. On April 6, 1885, Stark executed another judgment bond for $4,000, in substantially the same form, upon which judgment was entered in favor of Jacob Griel, Sr., to No. 1622 January Term 1885, in said court.

The exceptant alleged that this latter bond was given in lieu of the one first mentioned, which the accountant denied.

On July 15, 1885, John F. Griel, as attorney in fact of Jacob Griel, Sr., caused execution to be issued on the $2,000 judgment, under which execution Stark's personal 'property was sold by the sheriff, and the net proceeds thereof, amounting to $1,096.66, were paid into the hands of John F. Griel. On July 29, 1885, after this sale, Stark executed and delivered to John F. Griel a deed of voluntary assignment for the benefit of creditors, and the assignee on September 9, 1885, filed an inventory and appraisement showing the assigned property to consist of real estate valued at $6,100.

The $2,000 judgment having been revived to January Term 1886, John F. Griel on February 11, 1886, caused an alias writ of fieri facias to be issued thereon, and subsequently a writ of venditioni exponas. Under the latter writ the assigned real estate was sold by the sheriff in three parcels for sums aggregating $4,015, Jacob Griel, Sr., purchasing one of them for $1,000 and another for $3,000. Of the proceeds of the real estate sales Jacob Griel claimed to be entitled to the sum of $1,902.52, but his claim being disputed by certain mechanics' lien creditors an audit was raised, the final result of which was that the sum claimed was awarded to certain mechanics' liens: Griel's App., 2 Pa. S. C. Dig. 203.

Jacob Griel, Sr., died October 19, 1886, leaving a will upon which letters testamentary were issued to John F. Griel et al., the executors therein named.

The accountant being called for cross-examination, produced seven notes, bearing various dates in the year 1885, all drawn by Joseph Stark and indorsed by Jacob Griel, Sr., and also two receipts for the payment of rent for which Jacob Griel, Sr., was the surety of Stark, and testified that these notes and receipts did not exhibit all the indebtedness for which the two judgments were held as collateral security. He also admitted that he had in his possession certain other notes and certain book entries, checks, and other papers connected with the transactions which had taken place between Stark and himself as the attorney in fact of his father. The exceptant's counsel thereupon demanded their production, proposing to show by them that there was nothing due upon the collateral judgments given by the assignor at the time of the issue of the executions against him, the purpose being to have the accountant surcharged, as assignee, with the moneys collected from the assignor upon said executions, upon the ground that the same were now owing to the assignor from him, or from his father's estate, of which he was one of the legal representatives. The accountant, under the advice of his counsel, declined to comply with this demand and objected to any inquiry respecting the amounts due upon the judgments, as being outside of the auditor's powers. The auditor thereupon suspended the investigation before him, and reported to the court, for its opinion, the question thus raised as to his power to compel the production of the papers demanded, and as to whether they could be given in evidence by the exceptant for the purpose proposed, citing, in support of his action in referring these questions to the court, Mengas' App., 19 Pa. 221; Dyott's Est., 2 W. & S. 557; Leeds v. Bender, 6 W. & S. 315; Second N. Bank's App., 96 Pa. 460.

On May 26, 1888, the court, LIVINGSTON, P. J., filed an opinion in which it was held that the objection by the counsel for the accountant was well taken, and the court declined " to direct or advise the learned auditor to make an order " compelling the accountant to produce before him the books, notes, checks and papers demanded. Upon the filing of this opinion, the auditor resumed his investigation, declining, in accordance with

the opinion, to order the production of the papers and evidence asked for by the exceptants' counsel. The exceptant, Joseph Stark, then being called upon the witness stand, his counsel made an offer to prove by him the following matters, viz.:

That the exceptant and assignor had many business transactions with John F. Griel, the assignee, who acted as the factotum and general agent of his father, Jacob Griel, Sr., now deceased, and, of whose estate, which is entirely solvent, he is now one of the executors, dating or commencing at a period more than six years anterior to the death of Jacob Griel, Sr., or the making of the assignment, and running on up to the time of the assignment: That some of the promissory notes referred to in John F. Griel's testimony, in which Joseph Stark appeared as the drawer, and Jacob Griel, Sr., at the instance of John F. Griel, the indorser, were renewals and were made for the benefit of the indorser, and the money drawn by this assignee, John F. Griel, ostensibly for his father: That others of the same notes were drawn in the same way, the money of which was credited to Joseph Stark, but really received by the indorser or John F. Griel: That the rent now made a charge against Joseph Stark as having been paid by Jacob Griel, at the instance of this accountant, had long ago been settled and adjusted: That not a cent of the notes, payments and rents referred to in John F. Griel's testimony, is due the indorser or assignee, but on the contrary, on the settlement of their accounts up to the time of making the assignment, they owe this exceptant a large sum of money, viz.: between $4,000 and $5,000, besides $1,096.66 that John F. Griel received from the sale of witness's personal property: That witness was led to make the assignment on July 29, 1885, and after accountant had sold him out, upon the representation that it was solely for the benefit of this witness, and as a means of protection, so that witness might start anew the business in which he had been sold out by this accountant: That this promise of help or aid by accountant or his father was never carried out, which refusal to carry out said promise broke up said witness's business entirely and led to his financial ruin, he, the said John F. Griel, having been the purchaser of nearly all of witness's personal property at sheriff's sale, which had been used before that time by this witness in his business:

That not a cent is owing by this witness to either of the Griels, father or son, on the collateral judgments offered in evidence: That the $2,000 judgment was included and substituted in the $4,000 judgment; that the said assignee or his father owes this witness between $4,000 and $5,000, besides the $1,096 he realized on the personal property, on the settlement of their accounts. And the exceptant further wishes to show by record evidence that Mr. Griel had no such lien on exceptant's real estate, which was after acquired, as to entitle him to sell on the writs he did: That the Griel claims are the only ones of any moment against said assigned estate.

The offer was objected to for the accountant, as going beyond the scope of the investigation the auditor was empowered to make.

The auditor thereupon overruled the offer.[3]

The exceptant's counsel subsequently made a series of offers proposing to prove separately each of the propositions embodied in the offer already made. Each of these subsequent offers the auditor overruled.

The auditor filed a report in which, after stating the facts, he proceeded as follows:

It does not appear anywhere that Stark made any objection at the time of the sale of either the real or personal estate, or then claimed that any money was due him. He now claims that there was nothing due, in point of fact, on the judgments on which the plaintiff in the case realized the amounts given in evidence, and therefore the money thus realized is a balance in his hands which he holds as assignee of Joseph Stark et ux., and for which he is accountable; that John F. Griel, the assignee, by said power of attorney, and his acts was the factotum of his father and really did all the business as if he was the actual party, as he was; and that he was one of his father's executors. To this position the attorneys for accountant say that the proposed inquiry is one entirely outside of the powers of an auditor passing on exceptions to the account of an assignee. [In the second exception fraud and collusion is alleged. If that was so, then Joseph Stark, the assignor, must have been a party to the fraud. Could he take any advantage of his own

wrong? Would he not be met with the maxim, nemo allegans suam turpitudinem audiendus est?] [4]

[Is the position taken by the accountant's counsel that the auditor has no jurisdiction or power to receive testimony and inquire as to whether any money was due to Jacob Griel, Sr., on the judgments for $2,000 and $4,000 held by him against Joseph Stark, as collateral security, in this audit on the assigned estate of said Joseph Stark, John F. Griel being the assignee, the correct one? After a careful review of the facts in the case and study of the authorities, the auditor is of the opinion that he has no power or authority, in this proceeding, to inquire if the aforesaid judgments were valid or invalid, or fraudulent or collusive. If any wrong has been done to the assignor, his remedy, the auditor believes, is by affidavit and motion to open, in the Court of Common Pleas. It cannot be inquired into here. It is a collateral matter in which the auditor has no power or jurisdiction.] [2]

——In support of his views, the auditor cited Rice v. Railroad Co., 9 Phila. 294; Dyott's Est., 2 W. & S. 557; Dickerson's App., 7 Pa. 257; Thompson's App., 57 Pa. 175; Edwards's App., 66 Pa. 89; Borland's App., 66 Pa. 470; Malone's App., 79 Pa. 481; Second N. Bank's App., 85 Pa. 528; Postens v. Postens, 3 W. & S. 135; Cyphert v. McClune, 22 Pa. 195; Sloan v. McKinstry, 18 Pa. 120; Breading v. Boggs, 20 Pa. 33; and reported, that believing these authorities to be applicable and to govern this case, he had refused to make an order for the production of the books and papers called for by the exceptant, and, overruling the exceptant's offers of testimony, he dismissed all the exceptions to the assignee's account, and directed that Joseph Stark, as he had failed to sustain his exceptions, should pay the costs of audit, including an allowance of $50 to the accountant's attorneys.

Exceptions filed to the report of the auditor by the assignor, after argument were overruled by the court, PATTERSON, J., filing an opinion, and the auditor's report confirmed.

Thereupon the assignor and exceptant took this appeal, specifying inter alia that the court erred:

2, 4. In sustaining the rulings of the auditor in [  ] [2] [4]

3. In sustaining the refusal of the exceptant's offer.[3]

6. In refusing to surcharge the accountant.

7. In decreeing that the exceptant pay the costs, including $50 as counsel fee for the accountant.

*Mr. W. H. Roland* and *Mr. William R. Wilson*, for the appellant:

1. The power to compel the production of the notes, papers etc. in the possession of the accountant was conferred by § 32, act of June 14, 1836, P. L. 635; and the act of March 27, 1865, P. L. 38, authorizing the calling of the opposite party as a witness, includes the power to compel him to produce relevant documents: Campbell v. Knowles, 13 Phila. 163. The act of May 23, 1887, P. L. 158, which supersedes the act of 1865, by omitting the proviso as to bills of discovery shows the legislative tendency to enlarge the area of testimony.

2. The fallacy of the court's position that the auditor had no power to inquire into the validity of the two judgments, lies in confounding collateral or conditional judgments with absolute ones. An auditor has a right to inquire whether the plaintiff in an indemnifying judgment has in fact been damnified: Borland's App., 66 Pa. 470; Dyott's Est., 2 W. & S. 567; McCann v. Farley, 26 Pa. 173. On what principle our offer to prove that at the time of the assignment the assignee, either on his own account or as factotum of his father, owed the assignor between $4,000 and $5,000 was rejected, we cannot see.

3. There is no law in Pennsylvania to warrant imposing the payment of counsel fees as part of the costs of a cause, and a statute is necessary to justify such an allowance: Winton's App., 87 Pa. 77. The case cited was one in equity, where the power of masters and courts over costs is almost absolute. The decree in this case imposing upon the exceptant all the costs, including $50 as an attorney's fee for the opposing counsel, after driving the exceptant out of court without allowing him to show his case, is illegal and unprecedented.

*Mr. Charles R. Kline* (with him *Mr. George M. Kline*), for the appellee:

The careful opinion of Judge LIVINGSTON and the authorities cited in it, and also those cited in the auditor's report, render

any further citations unnecessary. If this were a case of distribution, and Griel's estate were pressing for payment of its judgments, other creditors would be entitled to know the extent of the estate's damnification. But the exceptant cannot, in this collateral proceeding, indirectly get rid of the judgments. He has another remedy.

OPINION, MR. JUSTICE CLARK:

We are of opinion that this decree must be reversed. The appellee, John F. Griel, is not only the assignee for creditors of Joseph Stark, but is also the executor of the last will and testament of Jacob Griel, Sr., deceased. The appellant's contention is that the judgments in question were not given for any absolute debt of Stark to Griel, but were conditional obligations, given to secure Griel from the effect of his indorsements for Stark's benefit, and that in fact there were no such indorsements existing at the time the sheriff's sales were made; that the indorsements exhibited in evidence were upon the accommodation notes of Stark given to Griel and discounted for Griel's benefit; that the sheriff's sales were made by a mutual arrangement or understanding of the parties with a view, as Griel said, to give Stark a new start in business; and that the proceeds of the sales coming into Griel's hands were for Stark's use under this arrangement. This, as we understand the case, is the substance of the offers made before the auditor, and which he refused. There was no offer to impeach the validity of the judgments; their validity was conceded, but the offer was to show that the judgments were given for one purpose, and that they had been used for a different purpose.

Now, if these offers were justified in the proof, and in all these transactions Jacob Griel, Sr., was represented by John F. Griel, it would seem to us that John F. Griel, as the assignee of Stark, should have charged himself with the proceeds of these sales received by Jacob Griel, Sr. Assuming the facts stated to be true, in what other way could the question of the liability of the estate of Jacob Griel, Sr., deceased, be determined? The solvency of Griel's estate, and its liability to Stark for the money thus received, being assumed, why should not the assignee charge himself as assignee, and take credit as executor, for the amount conceded to be in his hands? All

this is said upon the assumption that the proof is according to the full measure of the offers. Of course, when the evidence is taken, a wholly different case may appear.

Nor can we understand how, in the absence of any agreement to that effect, Stark can be charged with the payment of the fees of Griel's attorneys. If the understanding between Griel and Stark was as the appellant offered to prove, and Griel had carried it out in good faith, there might have been some ground for reimbursement for necessary fees and expenses attending the trust; but the appellee denies the trust and the fees were incurred in the very act of resisting it.

> The decree is reversed, and the record remitted for further proceedings; the appellee to pay the costs of this appeal.